## Case No. 17,835.

### WILSON v. SINGER.

[3 App. Com'r Pat. 334.]

Circuit Court, District of Columbia. June 30, 1860.

PATENTS — JOINT INVENTIONS — SURRENDER AND REISSUE—RES JUDICATA.

[1. When a reissue is asked, under the act of 1837, the old patent is surrendered by the free will of the owner, and the reissue operates de novo for the unexpired term. And in the case of a joint patent, therefore, the question of joint patentability is not res judicata, but is open to question, upon an application for a reissue.]

[2. A joint patent may be issued to two persons, where each has invented a distinct improvement on the same machine, the object sought to be attained being a unit, and the legal effect thereof is to vest in each of them a joint interest in both improvements.]

[3. Upon a surrender for reissue, the patentee or his assignee may make the reissue what he would have made the original, if he had known how, or if the office had permitted him to have it.]

On appeal from the decision of the commissioner of patents of the 20th of December, 1859.

DUNLOP, Chief Judge. This is an appeal by James G. Wilson from the decision of the commissioner, refusing to Wilson, as assignee, a reissue of the patent of Aikins & Felthousen of date the 5th August, 1851, with amended specifications and claims. An interference was declared by the office on the 15th April, 1859, between the application of Wilson, assignee of Aikins & Felthousen's patent of the 5th August, 1851, and the patent of I. M. Singer, dated the 12th August, 1851, reissued October 3, 1854, all relating to improvements in sewing machines. Wilson, as assignee, surrendered the patent of Aikins & Felthousen, under the 13th section of the act of July 4, 1836 [5 Stat. 122] for reissue with amended description and claims. The invention at issue, in this interference, is one of the approved devices in the sewing machine, and the commissioner in his decision says: "The main feature in controversy is a feeding device, consisting of a wheel, with a roughened surface projecting a little above the surface of the table, and a spring pressure pad, between which the cloth to be sewed is placed, and moved automatically forward, to receive the stitches, so that seams of any desired length may be sewed either in straight lines or curves, at the will of the operator." The original specification, on which the original patent to Aikins & Felthousen was granted, relating to the feeding device, is in these words: "To the front end of the shaft, K,

and within the circular shaped rest, W, is arranged a toothed feeding wheel, the teeth of which project sufficiently far through a slot in the top of said rest, W, to catch the cloth, and feed it under the needle, as said toothed feeding wheel is turned, by the operation of the pawl and rag wheel, before described; said feeding wheel running right or left, as the pawl may be set working, carrying the cloth in either direction."

The original fourth claim (struck out by the office) in the original patent of Aikins & Felthousen is in these words: "We claim feeding the cloth, under the needle, from right to left, or vice versa without stopping the machine, as fully set forth."

The claims of Wilson, on the reissue, as finally modified (they were at first fourteen), are ten in number. Of these the office allowed the 2d, 3d, 5th, 6th, and 7th, about which there is no dispute. The 1st, 4th, 8th, 9th, and 10th relate to the feed apparatus of the sewing machine, and are as follows:

1st. I claim the employment, in combination with a reciprocating needle, and a flat surface which supports the material to be sewed, of a rotating toothed feeding wheel, or other equivalent feeding device, to which the cloth is not attached, and a holder, which holds the material against the said feeding device, with a yielding pressure, substantially as and for the purposes herein specified."

"4th. I claim the employment in a sewing machine, of a table, which presents a surface for the support of the material to be sewed, on every side of, or all around, the needle, in combination with a feeding device, substantially as herein described."

"8th. I claim a sewing machine feeding the cloth or other substance, to determine the space between the stitches, by the friction of the surface of the periphery of the feed wheel, or any equivalent feeding device. substantially as specified, in combination with a spring pressure plate or pad, which gripes, or other substance against such feeding surface, substantially as specified, and for the purpose set forth.

"9th. I claim projecting the operating part of the surface of the feeding apparatus through the surface of the table, substantially as described, so that such feeding surface may act on a portion of the under surface of the material, to give the required motion to space the stitches, while the other portions of said material slide on the table, which answers the purpose of freeing the said material from the feeding surface, and to cover and protect the parts of the feeding device which are below the table.

"10th. I also claim the combination of mechanism substantially such as is herein described, so that the cloth or other material to be sewed, being placed upon the machine under the pressure pad. will be automatically carried forward. to receive the stitches, substantially as herein described, and so that seams of any desired length may be conveniently sewed into curves or figures at the will of the operator."

At the fourth page of the examiner's report of the 8th December, 1859, he says: "The invention involved in the patent of I. M. Singer, reissued Oct. 3rd, 1854, covers the combination in question, so far, at least, as the moving feeding mechanism is concerned. One clause of his claim is: 'In a sewing machine, feeding the cloth or other substance, to determine the space between the stitches, by the friction of the surface of the periphery of the feed wheel, or any equivalent feeding surface, substantially as specified, in combination with the spring pressure plate or pad, which gripes the cloth or other substance against such feeding surface, substantially as specified, and for the purpose set forth.' This reissue is based on a patent to I. M. Singer of the 12th August, 1851, and the specifications, drawings, and models in that patent clearly developed a complete anticipation of the invention now claimed by the applicant for this reissue, and this, too, in a perfectly operative machine."

That Wilson's amended claims, on his application for reissue, as assignee of Aikins & Felthousen, were covered by the original patent, specification, model, and drawings of Aikins & Felthousen of 5th August, 1851, I now proceed to show, by the official action of the office, at page 6 of the examiner's report of the 8th December, 1859. He says: "A reissue, therefore, can only properly be granted for the same invention as the one originally patented. Aikins & Felthousen have sworn that they are the original and first inventors of the sewing machine described in their patent, and, as the reissue now asked for purports but to correct the inadvertences, accidents, or mistakes in the original patent, the necessity or propriety of making the requirement of a new oath, on the part of the inventors. cannot be perceived." A new oath, would have been necessary if Wilson, in his amended claims, had been seeking anything new, and not embraced in "the same invention." This is a judgment of the office that the amended claims of Wilson covered only "the same invention" patented, or rather patentable, by right to Aikins & Felthousen on the 5th August, 1851, but then struck out by the office wrongfully. Again, at page 7 of the same report, the examiner says: "In this case there would be a liability to serious inconvenience to the applicant, in such a requirement (meaning a new oath), as his assignors seem, from the testimony, now to occupy an antagonistic position, and, besides, the machine, to some extent, seems to give sanction to the scope of the amended claim the assignee now seeks to have granted. I am, therefore, of opinion that. while cases may arise, where such a requirement might be just, and even necessary, it is not called for in this case." Again, at page 9 of the same report. the examiner says: "The facts here recited show, that Aikins & Felthousen.

and Singer took out letters patent at the same time for improvement in sewing machines, and that the improvements claimed in both machines so nearly resembled each other as to justify the declaration of an interference between them." Again, at page 12 of the same report, the examiner says: "The invention of Aikins & Felthousen, relative to the feed motion, consists in the employment of the table to support the cloth, through which projected the teeth cut in a thin disk of metal, that was driven by a pawl both ways, so as to feed the cloth forward and back, whilst the cloth was lightly pressed by a spring pressure on the toothed wheel. Here the examiner, properly, I think, interprets Aikins & Felthousen's fourth claim (struck out by the office) in the original patent as embracing the feed wheel, and the forward, as well as the reverse, motion.

The official letter of April 12, 1859, by Mr. Shugert, as acting commissioner, the office says: "These claims are the 1st, 3d, 5th, 6th, 7th, 9th, 12th, 13th, and 14th. As to these claims, the office admits that they are sustained by the model and drawings." The 1st, 5th, 12th, 13th, and 14th are identical with Wilson's finally amended 1st, 8th. 9th, and 10th claims, and relate entirely to the feed apparatus; and, at the close of the same official letter of the 12th April, 1859, it is said: "Claims 12, 13, and 14, involve the principle of the invention secured to Singer by the reissue of patents of August 12th, 1851, and are rejected thereon accordingly." These claims 12, 13, and 14 are identical with 8, 9, and 10 of Wilson's final amended claims, and relate exclusively to the feed apparatus; 8, 9, and 10 are for the feed claimed by Singer, and are said by the office, as above, to be the same in principle with the Singer claim, and to be sustained by the model and drawings in Aikins & Felthousen's original claim.

The commissioner in his decision (page 3) says: "The construction given by the courts and by my predecessors to that portion of the patent law relating to reissues is to the effect that a patentee, on an application for a reissue, may claim all those devices, which were clearly exhibited in his original specification, drawing, or model, and which he might have legally claimed at the time of taking out his original patent." As it appears by the official letter of the 12th April, 1859, and the passages of the examiners' report hereinbefore recited, that Wilson's amended claims are sustained by the model and drawings in Aikins & Felthousen's original patent, there can be no dispute that, other objections out of the way, they are proper subjects of a reissue.

The commissioner holds the main point in controversy in this interference to be "whether Aikins & Felthousen were the joint inventors of the feed device now claimed, by the assignee, James G. Wilson. The evidence on this point is very conflicting, but, from all the testimony submitted, I can come to no other conclusion than that the feed device ex-

hibited in the model and drawings of Aikins & Felthousen's patent of August 5, 1851, was the sole and independent invention of Aikins. The testimony of S. G. Parker, Stephen B. Cushing, and others, seem clearly to establish the fact that Aikins showed them a machine containing this device as early as the latter part of the year 1848, which machine was then in working order. Aikins at that time in conversation referred to it as his invention." The commissioner, at page 5 of his decision says: "It is doubtless true that two independent inventors, engaged in producing a particular new and useful improvement, may embody their separate inventions in one machine, and obtain a patent for said machine as joint inventors. But, in such a case, each must have contributed something to the machine, and the claims must be so drawn as to cover the joint invention only. I am not aware that this precise question has been ever determined by the courts, but it appears to me plain that the intention of the laws is to allow to joint inventors, in an application for a patent, to claim only such distinct features as are in fact the joint invention of both, or a combination of features, to which combination each person has contributed something."

These extracts of proceedings in the office show two things: (1) That the amended claims of Wilson, on this his application for reissue of the patent, obtained by Aikins & Felthousen on the 5th August, 1851, are shown in, and sustained by, the model and drawings presented to the office on their original application for a patent in April, 1851; and (2) that, under the decision of the supreme court, in Battin v. Taggert, 17 How. [58 U. S.] 74, the 44th general rule of the office, the 13th section of the act of 1836, and the 8th section of the act of 1837, these amended claims are the proper objects of a reissue, as a matter of right, in the original patentees, or their assignee, unless other good cause to the contrary is shown.

Although the office has declared an interference in this case between the claims of Wilson and Singer for the feeding device in the sewing machine, which imports identity of invention, there is a continued effort made by the examiner in the original report, by the commissioner in the answer to the reasons of appeal, and by Singer's counsel in argument, to distinguish them, on account of the roughened or serrated surface, of the feed wheel in Singer's model, and the pointed teeth on the periphery of the feed wheel in Aikins & Felthousen's model. This could not have been thought other than a difference in mechanical detail and finish. The principles in both models being declared by the office to be the same in the official letter of the 12th April, 1859, to which I have referred. Commissioner Bishop, in his decision, so treats the claims of the parties in controversy, as did the board of appeals in the office, and being myself of the same opinion, I shall dismiss all that is said by Singer's

counsel on the subject without further comment.

The aforegoing official extracts also show that the main point in controversy in this interference is whether the invention of the feed device in dispute,—that is to say, the forward feed,—was the sole invention of Aikins, or the joint invention of Aikins & Felthousen, or was properly the subject of a joint patent, to Aikins & Felthousen, as several inventors of it, and another patentable improvement on the same sewing machine. Before I proceed to discuss the main point, let me consider the objection raised by the appellant's counsel, that the matter of joint invention and joint patentability is res adjudicata. Mr. Stanton insists for Wilson that this question cannot be reopened upon an application for reissue; but the reissue is to be dealt with by the 8th section of the act of 1837, as on the original application, and on it the question of joint or sole invention is open, as is also priority of invention, laches, or any other legal cause which on an original application would lead the commissioner to refuse a patent. Whenever a reissue is asked, the old patent is surrendered by the requirement of the statute, and the free will of the owner and the reissue operates de novo, a new patent is granted for the unexpired term. The question of joint patentability on a reissue, it seems to me, is no more res adjudicata than the question of original and first invention, also at the same time decided, and, if this was conclusive, no interference could be declared, but I think that on a reissue it is not only competent for, but the duty of, the commissioner to declare an interference, if there is an existing claimant asserting right, as original first inventor, and so the office has properly decided in this very case. On the question of interference declared, the appellant's counsel contends, that priority is the only issue. This is certainly so as to the parties to the interference, but when one of the parties in the interference claims, not only priority of invention, but a patent, the commissioner must deny the claim to the patent, if the applicant has lost his right to a patent, even though original and first inventor, by laches, fraud, or any other legal cause.

The duty of the commissioner to the public calls him to decide these questions when they arise, and appear in the evidence before him, before he issues the patent applied for. Mr. Wilson, the applicant for the reissue, must meet the questions, not only of priority as to Singer, but the right to a joint patent of Aikins & Felthousen, his assignors, in the original patent granted to them 5th August, 1851. Has he established this joint right? As this is the leading point in the controversy, both as to the law and the fact relating to it, and has been most ably and closely argued by the learned counsel. I propose first to show what is the law in relation to joint inventions, and then to apply the facts in this case to the law so ascertained. If I am right in the legal principles I shall announce, there will be no difficulty in sustaining the reissue in favor of Wilson, even assuming the facts to be as his adversary, Mr. Singer, asserts. First, as to the law in Curt. Pat. § 3: "It has also been held that a patent may be taken for several improvements on one and the same machine, or for two machines which are invented by the patentee, and conduce to the same common purpose and object, although they are capable of a distinct use and application, without being united together. But a patent cannot be taken for two distinct machines, not conducing to the same common purpose or object, but designed for totally distinct and independent objects." Also, section 109: "The object which the inventor proposes to accomplish will always be the main guide by which to determine whether the subject matter is a unit or not." In Moody v. Fiske [Case No. 9,745], Judge Story says: "I wish it to be understood, in this opinion, that though several distinct improvements in one machine may be united in one patent, it does not follow that several improvements in two different machines, having distinct and independent operations, can be so included, m h less that the same patent may be for a combination of different machines, and for distinct improvements in each."

The law seems clear, therefore, that one patent may be taken by a single inventor for different and distinct improvements, in a single machine, because the object sought to be attained is a unit, and that no fraud is practised thereby on the revenue of the patent office. If one person can thus unite two or more different and distinct improvements on a single machine, in the same patent, it would seem in reason, and upon principle, impossible to deny the same right to two persons, who each invented one of the distinct and different improvements in the same machine. The object being a unit. they have each contributed to its attainment, and the patent must be joint, as the genius of the two has accomplished a result, which, as before said, is a unit. and therefore the subject matter of a single patent.

The commissioner in his decision admits the principle, although he fails to apply it to the case in hand, as I think he ought to have done. I refer to the passage in his decision heretofore cited by me. Unless this is a true interpretation of the law relating to joint inventions, which are mentioned and provided for in the patent acts, no joint invention could exist, unless each of two persons contributed an unpatentable element of invention, which unpatentable elements, when united, produced a patentable result; a thing which, to be sure, might happen (and which I will hereafter endeavor to show did happen, in this case of Aikins & Felthousen), but which I think is too refined and metaphysical for the practical business of life.

It would restrict, indeed almost obliterate, the theatre for joint invention, and it seems to one could never have been in the contemplation of the legislature in enacting the patent laws.

Let me apply this law to the case now before me on appeal. The feed apparatus of the sewing machine now in controversy embraces, among other things, the rotary feed wheel, and the mechanism to give it its forward motion, so as to feed the cloth to the needle, and space the stitches. This feed apparatus, it is insisted by Singer's counsel, invented in the early part of 1849, as the commissioner decides, before the date of Singer's invention of the same thing, was the sole invention of Aikins, and not the subject of a joint patent to Aikins & Felthousen, under whom Wilson claims title, as assignee.

Mr. Keller insists upon Felthousen's testimony that Felthousen only invented, or contributed to invent, the reverse or backward motion of the feed apparatus. Now, assuming Felthousen to be a competent witness, and that Mr. Keller has properly interpreted his testimony, then Felthousen had nothing to do with the feed proper, or "forward feed," as it is called, which was the sole invention of Aikins, but in the year 1850, as Mr. Keller alleges, after the date of Singer's invention of the feed proper, or forward feed, in the same year, Felthousen invented, or contributed with Aikins to invent, the reverse feed.

This reverse feed has been described by the office to be an improvement on the sewing machine, and, as such, patentable, and Wilson's claim No. 2 in his amended claims has been acquiesced in and granted by the office. See official letter of the 12th April, 1859. Now here are two distinct improvements on one and the same machine (the sewing machine); Aikins the sole inventor of one, and Felthousen the sole or joint inventor with Aikins of the other, with which other Singer has no connection, and to which he sets up no claim as inventor.

Upon the principles of law herein set forth, if sound and maintainable, Aikins & Felthousen were entitled, August 15, 1851, to the joint patent then granted to them, and Wilson, their assignee, to all the rights acquired by them under that grant. Aikins alone invented the feed wheel and feed apparatus for the forward feed, which was one patentable improvement of the sewing machine, and Felthousen, either solely, or jointly with Aikins, the reverse feed, which was another patentable improvement of the same sewing machine.

The fourth original claim, struck out by the office, is in these words: "We claim feeding the cloth under the needle, from right to left, or vice versa, without stopping the machine, as fully set forth. These two improvements were the subject of one joint patent to Aikins & Felthousen, which properly issued to them jointly, the legal effect of which joint grant was to vest each of them with a joint interest in both improvements, or, in the technical language of the law, to cause them to be seized "per my and per tout," and to be competent

by a joint grant or deed to convey the whole to Wilson, their assignee. The model and drawings of Aikins & Felthousen in the patent office in August, 1851, if they were the original first inventors of the above-named improvements, as now appears in proof, entitled them to have had these improvements embraced in their patent, as that was not done by the fault of the office in disallowing and erasing their claim, and without any fraud or deceptive intention on their part, under the decision in Battin v. Taggert, 17 How. [58 U. S.] 74. They and their assignee, Wilson, who stands in their shoes, have a just claim to have them inserted in a reissue. Where there is a defective or insufficient description or specification, on surrender, the patentee, or his assignee, can make the reissue patent what he would have made the original if he had known how, or if the office had permitted him to have it.

There is another view of Felthousen's testimony, supposing him a competent witness, not presented on the part of Singer's counsel, which proves the invention of the feed apparatus to be, in the strictest sense, the joint invention of himself and Aikins. In answer to the 9th cross interrogatory, Felthousen says: "I suggested and invented the application of the set screw, above the needle rod, to regulate the length of the stroke, and made the same. I also suggested the arrangement for feeding the cloth both ways, backwards and forwards, and helped make the machinery." A very ingenious and earnest argument has been made to show that Felthousen meant that he had suggested only the backward or reverse feed, as it is called, but, when the witness says backwards and forwards, I must take him to mean what he says. I do not feel at liberty to mutilate or erase any portion of his testimony. I must give to the language of the witness its plain and natural import, and this is the more incumbent on the judge when the natural import harmonizes with Felthousen's original oath in March, 1850, when the joint patent was applied for, and with the testimony of Parker, Cushing, and others, who testify that both forward and reverse feed appeared in the machine which they saw late in 1848, or early in 1849, and with the testimony of Hamner; Hollister, Hardy, and Bishop, who saw Felthousen at work with Aikins in 1848, and heard him say he was with Aikins, getting up a sewing machine, which would be a woman killer, &c. It is more reasonable and charitable, and, it seems to me, more judicial, to reconcile Felthousen's whole testimony with itself, and with the proof of the other witnesses, by supposing that Felthousen has been mistaken in the time when he and Aikins made their joint improvements on the sewing machine, and that they were made and completed not later than the early part of the year 1849.

But, if clear in this view of the case, is Felthousen a competent witness against Wilson? No rule of evidence is better settled on authority than that an assignor cannot, after assignment, impeach the title of his own assignee. Mr. Kel-

ler does not deny this law. He admits the rule of evidence, but says it has no application to this case. At page 8 of his additional argument, he says: "It is true that in the original application for the original patent he (Felthousen) joined in the oath of joint invention, but he nowhere has sworn that he was joint inventor with Aikins of the things now claimed by Wilson, as assignee." Is this so? The office has declared in the official letter of the 12th April, 1859, and the examiner in the passages of his report, to which I have referred, that all Wilson's present claims are sustained by the model and drawings of Aikins & Felthousen. Now Felthousen swore in his application to what was new in his model and drawings. The office has so decided, in not requiring Wilson, the assignee, to get a new oath from Aikins & Felthousen on the reissue, which would not have been left undone (as no patent can lawfully issue without the oath of the inventors), unless the office had thought the old oath applied to Wilson's present claims. Moreover, in the original application, Aikins & Felthousen (4th claim, struck out by the office) claimed as follows: "Fourth, we claim feeding the cloth under the needle, from right to left, or vice versa, without stopping the machine, as fully set forth." His claim was appended to the original application, when the oath was taken, though it was afterwards struck out by the office, and is covered by the oath.

It is true both the examiner and the commissioner construe this 4th original claim, so struck out, to be a claim only for the reverse feed motion, and not for the forward motion, nor for the feed wheel. However it may be as to the feed wheel, of which I shall presently speak, I cannot understand how the office confines this 4th original claim to the reverse motion only. The words are: "Feeding the cloth under the needle, from right to left, or vice versa, without stopping the machine, as fully set forth." "Right to left, or vice versa," certainly mean both feed motions, backwards and forwards, and you cannot get rid of either without expunging half the claim. Though this original claim is general and broad in its terms, and not prepared with technical accuracy, and certainly I think it ought to be construed to embrace the feed wheel, as well as both feed motions. The present construction of the office is most literal and rigid. It sticks in the bark, and does not agree with the passages in the examiner's report, hereinbefore cited by me. The feed wheel was in the original model, and is admitted to be new in the combination. The feed motion, backwards and forwards, to feed the cloth under the needle, could be effected only, as I suppose, by the revolutions of the feed wheel. This feed wheel is set out and described in the original specification of the original patent of Aikins & Felthousen in these words: "To the front end of the shaft, K, within the circular shaped rest, W, is arranged a tooth-ed feeding wheel, the teeth of which project sufficiently far through a slot in the top of said rest, W, to catch the cloth, and feed it under the needle, as said toothed feeding-wheel is turned by the operation of the pawl and rag wheel, before described; said feeding wheel running to the right or left, as the pawl may be set working, and carrying the cloth in either direction."

When the original 4th claim, in general terms, asserted the right to feed the cloth under the needle "from right to left, or vice versa, without stopping the machine, as fully set forth," it ought, as I have before said, in fairness, to be construed to embrace the feed wheel, the revolutions of which could alone feed the cloth to the needle from right to left, or vice versa, and which feed wheel is set forth in the original specification, as above detailed.

It seems to me, therefore, if Felthousen's late testimony on his examination by Singer is to be construed as the office and Mr. Keller contend, that he only invented, or helped to invent, the reverse motion of the feed apparatus, and not the forward motion and the feed wheel, his late testimony is in conflict with his original oath, and the credit of it thereby impaired. But Felthousen in his original 4th claim and in his original oath, as well as in his answer to the 9th cross-interrogatory on his examination as Singer's witness, is consistent in averring that he was a joint inventor with Aikin of the forward or feed motion proper, as well as the reverse feed. It is not denied. At all events, both the commissioner and the examiner assume it as clearly proved that the feed proper, or the forward feed, was invented and on the machine not later than the spring of 1849, long before Singer's alleged invention. Felthousen must therefore be foresworn or mistaken as to the time when he fixes his invention after his partnership with Aikins in the year 1850.

Assuming, however, against the clear proof in the cause, and against Felthousen's uniform and consistent averments, that he did invent, or contribute to invent with Aikins, the forward feed, and that he only invented the reverse feed in the fall of 1850, still, as this reverse feed, was a substantive patentable invention, he had a right, on the law, admitted by the commissioner, and sustained herein on authority and principle, to unite his invention with the invention of Aikins, and to take out with him, as they did, a joint patent for their several improvements on the same sewing machine; and the case, in this aspect of it, is strong against Singer as in any other view of it.

Lastly, if Aikins & Felthousen are to be rejected, as incompetent witnesses to impair Wilson's title, after assignment, the joint invention is prima facie proved by their original oath, and confirmed by the testimony of Hamner, Hollister, Hardy, Bishop, and others. Upon the whole, therefore, I am of

the opinion the original joint patent of the 5th August, 1851, properly issued to Aikins & Felthousen, as joint inventors; and, as James G. Wilson is their assignee, and his amended claims, on his application for reissue, cover only what was shown in the original model and drawings of Aikins & Felthousen, and of which they were the first and original inventors, a reissue patent ought to be granted to said Wilson, as prayed.

The fourth and fifth reasons of appeal are sustained. The commissioner's decision of the 20th December, 1859, is reversed, this 30th June, 1860, and I do this same 30th June, 1860, adjudge and order, that a reissue patent be granted by the commissioner to the said James G. Wilson, assignee of Aikins & Felthousen, for the amended claims claimed by him. I return to the honorable, the commissioner of patents, all the papers, model, and drawings with this my opinion and judgment this 30th June, 1860.

[The patent was accordingly reissued January 27, 1863, but was held void in Potter v. Dixon, Case No. 11,325.]